IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
ILLINOIS

| | |
|---|---|
| ROY L. LAWHORN<br>#S01265,<br><br>       Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC.,<br>J.B. PRITZKER,<br>ROB JEFFREY,<br>LATOYA HUGHES,<br>CHRISTEL CROW,<br>MR. MORRIS,<br>MR. E. SHELTON,<br>MR. C. HALL,<br>CARRIE C. MCCOWEN, and<br>DR. LARSON,<br><br>       Defendants. | Case No. 25-cv-00073-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

  Plaintiff Roy L. Lawhorn, an inmate of the Illinois Department of Corrections who is currently incarcerated at Big Muddy River Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Plaintiff is seeking monetary damages and injunctive relief. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a Complaint that is legally frivolous, malicious, fails to state a claim

upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

## THE COMPLAINT[1]

In the Complaint, Plaintiff alleges the following regarding ongoing inadequate medical treatment for various health conditions while he had been at Big Muddy Correctional Center: In February of 2022, Plaintiff had an allergic reaction to his MS (Multiple Sclerosis) injections, which continued for four days. (Doc. 1, p. 3). Despite the negative reaction to the medication, Dr. Larson refused to discontinue the injections, and Plaintiff had to sign a form formally refusing the injections. (*Id.*). The allergic reactions and MS attacks continued until July, causing Plaintiff to suffer "intense pain" in his head and numbness throughout his body, resulting in reduced vision. (*Id.* at p. 4).

On July 11, 2022, Plaintiff saw Dr. Larson and was sent to Good Samaritan Hospital for treatment, where he remained for seven days. (Doc. 1, p. 4). At the hospital, Plaintiff received "so many steroids that he ended up becoming overdosed with steroids to stop MS attacks." (*Id.*). To counteract the immense amount of steroids in his body, Plaintiff was then overdosed with insulin, causing his blood sugar to rapidly increase. Because of this increase, Plaintiff suffered a loss in vision from which he allegedly still suffers today. Plaintiff was recommended new glasses by his neurologist, but his request was denied by Wexford Health Sources, Inc. (Wexford).

---

[1] Because it appears that Plaintiff is relying on statements made in the Complaint and attached exhibits in asserting his claims, the Court is construing the allegations in all of these pleadings together. *See Otis v. Demarass*, 886 F.3d 639, 644 (7th Cir. 2018).

Plaintiff further alleges that he suddenly stopped receiving his daily medication, such as pain medication, Tylenol, ibuprofen, blood pressure medication, blood sugar medication, kidney medication, and others, subjecting Plaintiff to more pain and suffering. (*Id.*).

During the summer months, Plaintiff requested permission to be provided with extra ice to help combat his MS attacks, which are aggravated by high temperatures. (Doc. 1, p. 4). In the summer, the temperatures at Big Muddy Correctional Center rise close to 100 degrees. Plaintiff was denied permission for additional ice. (*Id.*).

In August of 2023, Plaintiff received blood testing for Lyme's disease at the request of his neurologist. (Doc. 1, p. 12). The blood was drawn by a nurse and sent to the University of Illinois Hospital & Health Lab for testing. The healthcare unit at Big Muddy River Correctional Center received the results on August 18, 2023. Plaintiff requested the blood be sent to IGeneX Labs for testing, but his request was denied on the grounds that the facility had a qualified lab to complete the test. (*Id.* at p. 12-13). When Plaintiff asked Dr. Larson about the results of the test, Dr. Larson stated that he did not understand the results (*Id.* at p. 13).

On September 29, 2023, the MRI requested by Plaintiff's shoulder doctor was denied. Dr. Larson instead ordered physical therapy, which Plaintiff claimed caused him more pain and suffering. (*Id.*).

On April 24, 2023, Plaintiff had previously began seeing a new neurologist and was ordered "tests" that would determine what medication he should be prescribed. (Doc. 1, p. 4). However, an appointment with the new neurologist and MRI were

cancelled by Wexford in October 2023. Also in October, Plaintiff received his new glasses. (Doc. 1, p. 5). Because they were the wrong prescription, however, Plaintiff suffered "major" headaches. (*Id.*).

In November of 2023, Plaintiff became sick with the Coronavirus (COVID) and did not receive any medical treatment. (Doc. 1, p. 5). While in quarantine, Plaintiff was told "No" by nurses when requesting medication to help relieve his pain and was denied access to see Dr. Larson. (*Id.*).

That same month, a Mount Vernon orthopedic doctor ordered a second MRI of Plaintiff's shoulder, which had been dislocated by a tactical team at Big Muddy River Correctional Center twice—once in 2013 and again in 2019. (Doc. 1, p. 5). Plaintiff alleges he had to put his shoulder "back in", causing shoulder damage and pain. This injury remains untreated. (*Id.*).

In June of 2024, Plaintiff finally received a copy of the results from the Lyme disease blood test previously conducted in August of 2023 (Doc. 1, p. 12-13). The results indicated that the test used had "poor clinical sensitivity for the detection of borrelia burgdorferi aka (Lyme's disease)." (*Id.* at p. 13). The test results also showed that Plaintiff was positive for John Cunningham Virus (JCV) antibodies at an undetermined time. The test results suggested considering another test, a more accurate test like the one conducted at IGeneX Labs. Although given this suggestion, Dr. Larson delayed further testing, which Plaintiff argues is medical neglect. Lyme's disease has been recently discovered to mimic MS. The validity that Plaintiff has Lyme's disease and proof that their body has antibodies to JCV should be reevaluated

by a more accurate test. Plaintiff states that JCV could turn to Progressive Multifocal Leukoencephalopathy, which is deadly, if not properly treated early. Dr. Larson refused to read the results and to order the correct test to be done and any further treatment. (*Id.*).

## PRELIMINARY DISMISSALS

All claims against state officials J.B. Pritzker, Rob Jeffrey, Latoya Hughes, and Christel Crow are dismissed. Plaintiff asserts his claims against Pritzker, Jeffrey, Hughes, and Crow under the doctrine of respondeat superior. (Doc. 1, p. 5). These claims are dismissed, as there is no respondeat superior liability under § 1983. Without personal involvement or liability, there can be no recovery. *See Perez v. Fenoglio,* 792 F.3d 768, 781–82 (7th Cir. 2015). Furthermore, Plaintiff's allegations against these defendants are insufficient to establish personal involvement in a constitutional deprivation. He states that Pritzker, Jeffrey, Hughes, and Crow "knew [he] was being mistreated by Big Muddy River C.C. staff and Wexford Health Sources, Inc. and failed to make an effort to provide adequate health care equal to that, which I could get were I not incarcerated under their care." (Doc. 1, p. 5). These assertions are vague and conclusory. Plaintiff does not describe any individual misconduct on the part of Defendants. *See Perez,* 792 F.3d at 781.

Plaintiff also asserts several facts regarding inadequate medical care that are not directed against any named defendant. These allegations include the poor treatment he received while at Good Samaritan Hospital, the denial of extra ice to assist with his MS symptoms when the temperatures rose, the denial of various

medications, and the denial of adequate treatment when he contracted COVID. (Doc. 1, p. 4-5). Thus, any claim Plaintiff intends to bring regarding inadequate medical care that is not linked or associated with a named defendant is dismissed without prejudice.

And finally, Plaintiff brings claims for the mishandling of his grievances, which are dismissed. (Doc. 1, p. 6). An administrative official who only reviews an inmate's grievance over the alleged misconduct of another person is not "personally responsible" for the complained-of conduct and does not incur liability in a civil rights case for denying the grievance. The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Further, "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [Plaintiff's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Id.* Therefore, the claims against E. Shelton, Morris CCII, and C. Hall for the mishandling of grievances under the Eighth and Fourteenth Amendments are dismissed with prejudice, as the mishandling of grievances is not a constitutional claim.

## DISCUSSION

Based on the allegations made in the Complaint, the Court finds it convenient to designate the following counts:

**Count 1:** Eighth Amendment claim against Wexford for failing to provide Plaintiff adequate medical care.

**Count 2:** Eighth Amendment claim against Dr. Larson for inadequate medical care based on Larson's failure to discontinue MS injections and provide adequate treatment for Plaintiff's MS in 2022.

**Count 3:** Eighth Amendment claim against Dr. Larson for inadequate medical care based on the failure to conduct more medical testing and implement treatment following receipt of the results from the 2023 Lyme disease blood test.

**Count 4:** Eighth Amendment claim against Dr. Larson for denying the request for an MRI and ordering physical therapy for Plaintiff's shoulder in the fall of 2023.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

### Count 1

Plaintiff's claim against Wexford for inadequate medical care is dismissed. As Wexford is a private corporation that contracts with the state, it is treated as a municipality for the purposes of § 1983 actions. This means that to maintain a viable

---

[2]*See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

claim against Wexford Health Sources, "a plaintiff must demonstrate that a constitutional deprivation occurred as a result of an express policy or custom of the government unit." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 (7th Cir. 2002).

Plaintiff alleges that because of Wexford (1) he was denied new glasses; (2) his MRI and appointment with a neurologist in 2023 were cancelled; and (3) blood was incorrectly drawn for the purposes of prescribing blood thinners. (Doc. 1, p. 4-5). He asserts that Wexford failed to make any effort to provide him proper medical care "equal to that, which [he] could get were [he] not incarcerated." (*Id.* at p. 5). Although he generally claims that Wexford has a history of mistreating individuals in custody, he does not point to any specific policy or custom that results in the mistreatment of individuals in need of medical care. "Nor is there any indication that it was an official policy or practice that caused his injur[ies]." *Love v. Neal,* No. 21-CV-115-DRL-MGG, 2021 WL 1922943, at *2 (N.D. Ill. 2021). Thus, Plaintiff's claim against Wexford is dismissed without prejudice.

### Count 2

Plaintiff's Eighth Amendment claim for inadequate medical care against Dr. Larson survives preliminary review. Medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical condition, and (2)

the defendant acted or failed to act with deliberate indifference to the risk of harm from that condition. *Id; see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

Plaintiff claims that despite having allergic reactions to his MS medication for months Dr. Larson refused to discontinue the injections and properly treat his MS, which ultimately resulted in hospitalization, pain, numbness, and reduced vision. (Doc. 1, p. 3). These allegations are sufficient for Count 2 to proceed against Dr. Larson.

### Count 3

Plaintiff's Eighth Amendment claim based on the failure to conduct more medical testing and treatment based on the Lyme disease blood test results also survives preliminary review. Plaintiff claims that he is suffering from MS but has been told that Lyme disease mimics MS. (Doc. 1, p. 13). He also has tested positive for JCV which can lead to PML. These diseases, along with other medical problems, can be objectively seen as serious, sustaining that Plaintiff suffered from an objectively serious medical condition. Dr. Larson received the results of the blood test and informed Plaintiff that he did not understand the results of the lab. Dr. Larson refused to order further testing and treatment, despite the inconclusive and questionable results. These allegations are sufficient for Count 3 to proceed against Dr. Larson.

### Count 4

Plaintiff has failed to state a deliberate indifference claim against Dr. Larson for ordering physical therapy to treat Plaintiff's shoulder in the fall of 2023.

Plaintiff asserts that on September 29, 2023, an outside specialist recommended that he have an MRI for his shoulder. (Doc. 1, p. 4). Rather than ordering an MRI, Dr. Larson prescribed physical therapy. Plaintiff states that the physical therapy ended up causing him further pain due to his MS. (*Id.*). He then was sent again to a specialist for his shoulder on November 17, 2023, who also recommended an MRI. Plaintiff does not provide any further facts regarding the treatment for his shoulder after this second appointment. Nor does he assert that Dr. Larson was aware that the physical therapy aggravated his MS symptoms. Because simple disagreement with a medical professional about treatment does not state a cognizable Eighth Amendment claim, Count 4 is dismissed. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a motion asking the Court to recruit counsel on his behalf. (Doc. 4). Pursuant to 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." When faced with a motion for recruitment of counsel the Court applies a two-part test: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Competency to litigate includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial. *Id.* at 655.

Plaintiff has met the first requirement, demonstrating that he has made reasonable attempts to obtain counsel on his own. In his motion, Plaintiff includes proof of requests for counsel that were sent to firms and includes a number of responses he has received. The Court, however, does find that Plaintiff is capable of representing himself at this stage. Other than stating that he does not know the law, Plaintiff does not provide any reasons as to why he would be unable to represent himself. Plaintiff has a college education and has shown the ability to draft coherent sentences and relay information to the court. He has successfully drafted motions, gathered evidence, and described the facts of his case. At this early stage, lack of legal knowledge is not a sufficient reason to recruit counsel. Therefore, the recruitment of counsel is not warranted at this time, and the motion is **DENIED**.

## DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** is **DISMISSED without prejudice**. **COUNT 2** will proceed against Defendant Larson. **COUNT 3** will proceed against Defendant Larson. **COUNT 4** is **DISMISSED without prejudice.** Because there are no surviving claims against Wexford Health Sources, Inc., Pritzker, Jeffrey, Hughes, Crow, Morris, Shelton, Hall, and McCowen, they are **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to **TERMINATE** these parties as defendants on the docket.

Because Plaintiff's claims involve his medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Doctor Larson the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendant only needs to respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Plaintiff and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in a dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  July 14, 2025**

          *s/ Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.